301 So.2d 85

**The INDEPENDENT LIFE AND ACCIDENT INSURANCE COMPANY, a corporation**

v.

**Willie J. MAXWELL.**

**Civ. 341.**

Court of Civil Appeals of Alabama.

July 24, 1974.

Rehearing Denied Aug. 21, 1974.

398

Radney & Morris, Alexander City, for appellee.

Russell, Raymon & Russell, Tuskegee, for appellant.

HOLMES, Judge.

This is an appeal from a jury verdict and judgment rendered thereon in a suit for payments allegedly due on four separate policies of insurance issued by appellant-insurance company insuring the life of appellee's wife against death by accidental means.

Appellant-insurance company denied liability by its plea in short by consent and based its defense on a denial of appellee's contention that the death of his wife was due to accidental means as covered by the policy.

Trial was held in the Circuit Court of Macon County; the jury rendered a verdict in favor of appellee-plaintiff for $5,000; and a judgment was rendered thereon. Appellant-insurance company made a motion for a new trial which was overruled, and now appeals to this court.

Learned counsel for appellant argues eleven assignments of error, of which one deals with the failure of the trial court to give the affirmative charge in favor of the appellant; three relate to evidentiary matters; six urge error in the failure of the lower court to give certain written charges; and one assigns as error the failure of the lower court to grant the motion for new trial which embodies the above mentioned assignments of error.

Pertinent parts of the policies in question are as follows:

"Death by accidental means is defined as death resulting directly and independently of all other causes from bodily injury effected solely through external, violent, and accidental means, of which, except in the case of drowning or internal injuries revealed by autopsy, there is a visible contusion or wound on the exterior of the body, and occurring within 90 days after sustaining such injury.
. . .

. . . . . .

"The Accidental Death Benefit Provision shall not cover death resulting directly or indirectly from bodily or mental infirmity, or disease, or medical or surgical treatment therefor or infection of any nature unless such infection is incurred through an external visible wound sustained through violent and accidental means. . . .

. . . . . .

"Death by accidental means is defined as death resulting directly and independently of all other causes from bodily injury effected solely through external, violent, and accidental means, of which, except in the case of drowning or internal injuries revealed by autopsy, there is a visible contusion or wound on the exterior of the body and occurring within 90 days after sustaining such injury.
. . .

. . . . . .

"EXCEPTIONS

"The Agreement as to benefit under this Policy shall be null and void if the Insured's death or injury results, directly or indirectly, from any of the following causes:

. . . . . .

"6. Bodily or mental infirmity, or disease, or medical or surgical treatment therefor;

. . . . . .

"8. Infection of any nature unless such infection is incurred through an external visible wound sustained through violent and accidental means."

The clauses quoted above clearly indicate that the policies in question all contain the so-called "additional clause", which Alabama courts have held to mean that if the disease, in cooperation with the accidental injury, is an efficient cause of death, then there can be no recovery for accidental death. Union Central Life Ins. Co. v. Scott, 286 Ala. 10, 236 So.2d 328; Liberty National Life Ins. Co. v. Reid, 276 Ala. 25, 158 So.2d 667; First National Bank v. Equitable Life Assur. Soc., 225 Ala. 586, 144 So. 451.

However, we have further held that the presence of the additional cause in insurance policies does not mean that mere feebleness, nor predisposition to recurrence of former disease, nor every infirmity which may aggravate the effects of an accidental injury is to be regarded as the cause of death. First National Bank v. Equitable Life Assur. Soc., *supra.*

Moreover, we have previously observed that if the injury in question starts a chain reaction resulting in death, then recovery may be had even if some links in the chain are dormant diseases or physical condition without which the chain would be broken. In order to determine this, each case must be particularized. Liberty National Life Ins. Co. v. Reid, *supra*; New York Life Insurance Co. v. McGehee, 5 Cir., 260 F.2d 768.

In Union Central Life Ins. Co. v. Scott, *supra,* quoting from the language of Prudential Ins. Co. v. Calvin, 227 Ala. 146, 148 So. 837, our supreme court, in dealing with a policy involving an additional clause, stated the following:

"The provision in the policy contract, viz., 'or directly or indirectly from bodily or mental infirmity or disease in any form,' means, and can only mean, when construed in connection with the precedent clause, that, if the insured was suffering at the time of the accident with some infirmity or disease, and the accidental injury, operating with the disease, produces death, then this would not create liability; but, where the accident directly and immediately, exclusive of other causes, produces the bodily infirmity or disease, and death results therefrom, then the accident must be held to be the sole proximate cause of the death.

"To hold as contended for by appellant, this clause in the policy contract would require a construction that it embraced accidents, which produced immediate death, without intervening complications, which the accident itself produced.

"To state it in different language, the exception in the policy is against liability for death produced by the accident and disease, which the accident did not produce, and not from liability for death caused by disease or infirmity, which the accident itself did produce. . . .

"There were tendencies of the evidence which did not justify the court in giving, at the request of the defendant, the affirmative instruction in its behalf. The evidence required the submission of the case to the jury." (227 Ala. at 153, 148 So. at 843)

In New York Life Insurance Co. v. McGhee, *supra*, the defendant insurance company asserted that the insured had arteriosclerosis at the time of the accident and that this, among other conditions, contributed to or caused his death. The policy contained the additional clause. In discussing the problem, that court stated:

"A review of the Alabama cases and the decisions of this Court shows that considerable latitude must be allowed the jury in determining the question of causation. *An insurer cannot escape liability simply by showing that some disease may have contributed to some extent to the insured's death.* Most elderly people have some ailment, some latent disease. When an old person is injured, almost invariably an ailment is aggravated, a dormant disease activated, and the effects of the injury intensified because of general frailty and lack of resistance to illness. Progressive weakness and increasing complications follow any time an old person is put to bed for any length of time. In every case therefore it is difficult to separate the effects of the accident from the effects of disease.

The insurer would have us hold that there can be no recovery unless Death is present at the scene of the accident, or openly waits in continuous attendance on an injured insured from the moment of injury to the moment of death. Alabama courts, and this Court, take a more reasonable view. . . ." (Emphasis added)

The above quoted language has been quoted approvingly in Independent Life and Accident Ins. Co. of Jacksonville v. Maddox, 284 Ala. 532, 226 So.2d 315; and Union Central Life Ins. Co. v. Scott, *supra.*

■ Additionally, the rule in this state is well settled that in civil cases the ques-

tion must go to the jury if the evidence or reasonable inferences therefrom furnish a mere gleam, glimmer, spark, the smallest trace, a scintilla, in support of the theory of the complaint. Union Central Life Ins. Co. v. Scott, *supra*; Lankford v. Mong, 283 Ala. 24, 214 So.2d 301; Payne v. Jones, 284 Ala. 196, 224 So.2d 230. We further note that the rule is the same if the scintilla of adverse evidence is developed by the cross-examination of any witness, thus presenting a jury question. Chestang v. Kirk, 218 Ala. 176, 118 So. 330; Jones v. Bell, 201 Ala. 336, 77 So. 998.

■ We further note that Alabama law clearly provides that in determining the propriety of a general affirmative charge when requested by the defendant, the evidence most favorable to the plaintiff must be accepted as true. Purity Ice Co., Inc. v. Triplett, 257 Ala. 116, 57 So.2d 540; Key v. Dozier, 252 Ala. 631, 42 So.2d 254.

We therefore must look at the pertinent facts and tendencies of the evidence below.

Plaintiff-husband had been married to the deceased approximately a year before her death on September 20, 1972, when she was found dead in her automobile which had apparently run off the road late that evening. The only visible trauma on deceased's body was a cut on her forehead about a centimeter long and a couple of millimeters deep. Plaintiff sued defendant-insurance company on the accidental death policies, and defendant denied liability under its plea in short by consent.

The controlling issue in the case at trial was the cause of death of deceased.

The plaintiff-husband testified that his wife had been in good health during the period of their marriage and had had no problem in breathing at any time.

Appellee-plaintiff introduced into testimony the deposition of Dr. Robert Jones, a pathologist, who performed an autopsy on the decedent on two occasions. Dr. Jones stated there was a laceration and contusion on deceased's right forehead.

The doctor stated that he found evidence of chronic bronchitis and that each bronchial was filled with mucus plugs.

Plaintiff propounded the following hypothetical question which was answered by Dr. Jones:

"Q Now, doctor, I am going to ask you to assume that prior to Mrs. Maxwell's death, that she had no overt symptoms of any lung disease and bronchial infections and so forth, and further assume that she had no coughing or wheezing prior to this, no pneumonia or respiratory problems prior to her death, no history of it, and her only history of lung involvement was a cold approximately two to three months prior to her death, and that she was an educated woman who would have and could have recognized symptoms or illness involving respiratory problems, and assuming that on the date of her death she performed what could be normally called the normal duties of a housewife; that is, cleaning house and cooking, and further assume that at around 9:00, on the date of her death, she left home by an automobile, and shortly thereafter, she was found in an automobile which had collided with a tree, and based on the established fact that there was antimortem superficial wounds to her head, contusions, lacerations on her forehead, and that further this was substantiated by your autopsy report. Based on this hypothetical question, doctor, do you have a judgment as to the cause of her death in this case?

.    .    .    .    .    .

"A All right. Based on that question, I feel the cause of death was traumatic, for traumatic reasons that aggravated an underlying chronic lung condition, that being chronic bronchitis, mucus plugs and so forth. Assuming she had no symptoms prior to this, I think she would not have expired if it had not been for the trauma, making that assumption."

Dr. Jones also answered the following:

"Q State whether or not, in your judgment, the traumatic injury she sustained to her forehead and the accompanying contusion with it, in your best judgment, activated this dormant respiratory problem that she had prior to her death.

"A Yes.

.    .    .    .    .    .

"Q All right, Doctor, from your knowledge that you gathered from the autopsy and from the history that has been explained to you, and based on your knowledge, training and experience, what in your judgment was the proximate cause of the death of Dorcas Anderson Maxwell?

"A Well, really, what we just stated. The cause of death was trauma and chronic bronchitis with mucus plugs leading to respiratory failure.

"Q And in your judgment, was the trauma she sustained the proximate cause of her death?

"A Yes. Based on her previous history of no symptoms, yes."

Furthermore, Dr. Jones stated that he believed the bodily injury aggravated deceased's underlying disease which she had no symptoms of prior to the accident, and that, in his opinion, she would not have died had she not had the injury. He testified that he didn't think deceased died solely of a disease or solely of a bodily injury, but that the injury aggravated her underlying disease of which she had no symptoms prior to the accident. Dr. Jones, in answer to a question, stated that decedent's death resulted directly but not independently of other causes.

Appellant-insurance company called as witnesses the coroner of Coosa County who signed the death certificate stating deceased died of natural causes; Dr. Richard Roper, Toxicologist for the State of Alabama, who testified that in his opinion there was no injury that caused death; Dr. R. L. Little, Jr., a pathologist, testified his microscopic findings showed acute bronchitis and congestion of the pulmonary system, and that he believed decedent died of natural causes due to an infectious or infectious-plus-allergic condition.

Appellant-defendant urges as error the lower court's failure to grant the affirmative charge in favor of appellant. We cannot agree.

We recognize the fact that our decisions have held that the affirmative charge with hypothesis should be given upon the clear, unimpeached and uncontradicted evidence of expert witnesses, such as doctors, rested on facts ascertainable by the aid of instruments, learning, and experience which are outside the knowledge of laymen. Union Central Life Ins. Co. v. Scott, *supra*; New York Life Ins. Co. v. Zivitz, 243 Ala. 379, 10 So.2d 276; Commonwealth Life Ins. Co. v. Harmon, 228 Ala. 377, 153 So. 755.

■■ However, the weight of such testimony is subject to all the rules pertaining to the testimony of other witnesses within the realm of their knowledge. Furthermore, the jury is not bound by the testimony of such experts unless uncontradicted and pertaining to subjects for experts alone. Commonwealth Life Ins. Co. v. Harmon, *supra*; Pollard v. Treadwell, 234 Ala. 615, 176 So. 452.

■ In the instant case, we note that the testimony was somewhat conflicting as regards the death and the importance of circumstances surrounding it. The husband testified to his wife's good health and lack of symptoms evincing any underlying ailment, and Dr. Jones testified that, in his opinion, the trauma proximately caused the death by aggravating an underlying chronic lung condition. Doctors Little and Roper, testifying for the defense, stated they did not believe the trauma had anything to do with the death of decedent, but that she died of natural causes.

This testimony should be viewed in light of the following statement by our supreme court in National Life & Accident Ins. Co. v. McGhee, 238 Ala. 471, 478, 191 So. 884, 890:

"[I]n an action on an accident insurance policy, where the evidence is conflicting as to whether the accident was the sole proximate cause of the injury in question or the result of natural causes, or reasonable tendency of such conflicting evidence, makes a jury question. Such is the result nothwithstanding the opinion of experts given in evidence that did not exclude the reasonable field of common knowledge and experience as to the result. A jury question is presented. Metropolitan Life Insurance Co. v. Halsey, 230 Ala. 193, 160 So. 248."

In view of this principle, the aforementioned scintilla rule followed by the courts of this state, and in light of the testimony of plaintiff and portions of Dr. Jones' testimony, the issue as to the cause of death and liability of the insurer properly went to the jury. Ball v. National Life & Accident Ins. Co. of Nashville, 270 Ala. 265, 118 So.2d 724; Commonwealth Life Ins. Co. v. Harmon, *supra*. It was within the jury's province to evaluate the testimony of the witnesses and to give consideration to those pertinent aspects of Dr. Jones' testimony as set out in this opinion at the outset.

We particularly note the testimony by Dr. Jones to the effect that the death of deceased was a direct result from the trauma sustained in the accident. Applying this contention to our above quoted passage from Liberty National Life Ins. Co. v. Reid, *supra*, regarding allowance of recovery where the injury starts a chain reaction resulting in death, we cannot hold that the lower court erred in refusing to give appellant-insurer's requested affirmative charge with hypothesis, nor in refusing to grant appellant's motion for new trial on this basis.

Appellant's assignments of error five through ten deal with the refusal of the lower court to give certain requested charges all dealing with the death of deceased and the question of coverage under the policies in view of the so-called additional clause.

It is our opinion that the matter with which the refused charges were concerned was substantially and fairly given to the jury by the learned and distinguished trial judge's oral charge to the jury.

Alabama Code (1940), Tit. 7, § 273, provides in part as follows:

"The refusal of a charge, though a correct statement of the law, shall not be cause for a reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the court's general charge or in charges given at the request of parties."

See 18A Ala.Dig., Trial, ☜160, and cases cited therein.

Accordingly, appellant's assignments of error five through ten are not well taken.

Appellant's assignment of error three states that the lower court erred in admitting into evidence the hypothetical question and answer presented to Dr. Jones which we have previously set out in this opinion.

We note at the outset that the frame and substance of hypothetical questions to expert witnesses is a matter largely committed to the discretion of the trial court, and the ruling of the court on such matters will not be disturbed unless such discretion has been abused. Barfield v. Wright, 286 Ala. 402, 240 So.2d 593; Louisville & Nashville Railroad Co. v. Self, 45 Ala.App. 530, 233 So.2d 90.

We further note that the hypothetical question should incorporate sufficient facts in evidence upon which an expert opinion can be fairly based. Barfield v. Wright, *supra*.

Plaintiff's hypothetical to Dr. Jones was properly admissible to elicit the doctor's opinion of the cause of death of decedent. The doctor answered the hypothetical and after a couple of comments, he stated he was further assuming a loss of consciousness or semi-consciousness as a result of the trauma he had observed. Appellant argues that no evidence was subsequently introduced showing that consciousness or semi-consciousness resulted from the trauma, and therefore, that the court was in error in overruling the objections to the hypothetical.

Without making a determination of error, but assuming the admission of the answer in question was error, it was harmless error, for the doctor later answered a question asking for his opinion as to the proximate cause of death based upon his knowledge, autopsy, training and experience, and his answer was the same as before. There was no objection by appellant-defendant. Accordingly, we find no reversible error in this instance.

Assignment of error one relates to the trial court's sustaining of appellee's objection to the following question by appellant to plaintiff regarding the death of plaintiff's first wife:

"Reverend, when she died wasn't she found in an automobile with the lights running, the lights on and the motor running and the doors closed?"

We consider this assignment of error, keeping in mind the well-settled rule that the question of remoteness or relevancy of testimony is a matter ordinarily within the discretion of the trial court, and unless such discretion is grossly abused it will not be considered error on appeal. Blount County v. Hollingsworth, 45 Ala. App. 401, 231 So.2d 324. See also 2A Ala.Dig., Appeal and Error, ☞970, and cases cited therein.

Counsel for appellant was attempting to question plaintiff regarding the circumstances of plaintiff's first wife's death, which was not at issue in the case at bar. Appellant urges that the testimony should be admissible to show a similarity between the death of plaintiff's first wife and the death of his second wife, the deceased, in the case at bar.

We are of the opinion that such evidence is not material nor relevant to the issues of the instant case, and further, the admission of such testimony could have a prejudicial effect. Accordingly, we cannot hold the lower court abused its discretion in sustaining appellee's objection to the propounded question.

Appellant urges error by assignment of error two that the lower court should have sustained appellant's objection to testimony by Dr. Jones regarding decedent's health prior to her death and referring to an x-ray report by a radiologist some three months prior to decedent's death.

Appellant asserts that such testimony is hearsay, and that the condition of decedent's health three months prior to her death is too remote in time to have probative value and, therefore, should have been excluded.

As stated above, the admission of such testimony is discretionary with the trial court and will not be disturbed in absence of abuse of discretion.

We might point out that even assuming the testimony by Dr. Jones regarding decedent's health based upon the x-ray report was inadmissible, he had previously testified to a prior history of good health, which was not objected to by appellant. Furthermore, there had already been testimony by decedent's husband regarding his wife's status of good health. This testimony, as discussed at the outset of this case, was sufficient to put the question of decedent's health to the jury to ascertain along with all other testimony. Therefore, even assuming error in allowing the doctor to testify as to the x-ray report, it was

harmless error. Ala.Code (1940), Supreme Court Rule 45.

Upon consideration of all assignments of error and in accord with the above, the judgment of the trial court is due to be affirmed.

Affirmed.

WRIGHT, P. J., and BRADLEY, J., concur.